Robert B. Carey (SBN 011186)
John M. DeStefano (SBN 025440)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
Email: johnd@hbsslaw.com

*Attorneys for Plaintiffs*

*[Additional counsel on signature page]*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Morgan Muehlhausen, an individual, Berenice Gaytan, an individual, Russell Wood, an individual, on behalf of themselves and all others similarly situated, | Case No. _____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| Allstate Fire and Casualty Insurance Company, an Illinois Corporation, | |
| Defendant. | |

CLASS ACTION COMPLAINT

1

TABLE OF CONTENTS

Page

I.      INTRODUCTION.................................................................................. 1

II.     PARTIES.............................................................................................. 2

III.    JURISDICTION AND VENUE............................................................ 3

IV.     GENERAL ALLEGATIONS AS TO ARIZONA LAW ....................... 3

V.      ALLSTATE FIRE IMPROPERLY REFUSES TO  DISCLOSE AND STACK
        PLAINTIFFS' COVERAGE................................................................ 5

VI.     CLASS ACTION ALLEGATIONS..................................................... 19

FIRST CLAIM FOR RELIEF  (DECLARATORY JUDGMENT)................................ 22

SECOND CLAIM FOR RELIEF (BREACH OF CONTRACT) ..................................... 23

THIRD CLAIM FOR RELIEF (BAD FAITH AS TO THE CLASS)............................. 24

FOURTH CLAIM FOR RELIEF (INDIVIDUAL DAMAGES FOR BAD FAITH) ...... 25

PRAYER FOR RELIEF .......................................................................................................... 26

## I.   INTRODUCTION

1.      Under Arizona law, auto insurers must permit their customers to stack policies or coverages for uninsured and underinsured ("UM/UIM") motor vehicle accident claims, unless the insurer employs one of two easy methods to avoid stacking – either (1) including a "statement" in the policy "inform[ing]" the insured of their "right to select one policy or coverage" as "applicable to any one accident," or (2) sending the insured, within thirty days of being notified of the accident, written notice of their "right to select one policy or coverage." A.R.S. § 20-259.01(H). Here, the insurer did neither.

2.      "Stacking" refers to "when an insured obtains coverages for several vehicles and then attempts to claim multiple [UM or] UIM coverages for the same accident." *Am. Family Mut. Ins. Co. v. Sharp*, 277 P.3d 192, 196 ¶ 15 (Ariz. 2012).[1] Because UM/UIM coverage is a personal coverage—despite being associated with a vehicle—it covers the person, not the vehicle. When there are multiple vehicles, multiple UM/UIM coverages can exist, and those coverage limits can be added together to provide "stacked" benefits for a single claim. Each separate coverage limit can be accessed to provide benefits for the same covered loss. When stacking coverages, the coverage limit is determined by adding together the UM/UIM benefits limits available under each vehicle's UM/UIM coverage.

3.      When an insured is injured, insurance companies must find coverage for the insured, identify available coverages and limits, inform the insured accurately about available coverages and benefits, reasonably investigate the claim and applicable law, construe the policy in accordance with known law, treat its insured fairly and reasonably,

---

[1] *See also Rashid v. State Farm Mut. Auto. Ins. Co.*, 162, Ariz. 270, 272 n.2, 787 P.2d 1066, 1068 n.2 (1990) (defining "stacking" as "combin[ing] the coverages of a single policy or multiple policies issued by a single insurer"); *State Farm Mut. Auto. Ins. Co. v. Arrington*, 192 Ariz. 255, 258-60, 963 P.2d 334, 337-39 (App. 1998) (stacking occurs when "all available policies are added together to create a larger pool from which the injured party may draw in order to compensate him for his actual loss where a single policy is not sufficient to make him whole;" the insureds' "benefit of the bargain is the cumulative UIM limit . . . Thus, when their damages are higher than the limits of one policy, the other policies can be tapped to make up the difference") (internal quotations omitted).

give the insured's interests equal consideration, and not conceal or misrepresent pertinent policy provisions, benefits or coverages.

4.     In handling UM/UIM claims for its customers with multiple covered vehicles, Defendant Allstate Fire and Casualty Insurance Company ("Allstate Fire") has breached all of these duties as well as the policies themselves. As a matter of standard policy and practice, Allstate Fire applied a single UM/UIM coverage limit to Plaintiffs' claim even though Allstate Fire neither inserted the statutorily-required "right to select" statement in its policy, nor advised class members of that right in writing. Allstate Fire, therefore, was responsible for stacking, and for disclosing and providing UM/UIM coverage up to the stacked limits required by Arizona law and the policies but failed to do so. Having failed to utilize either anti-stacking option permitted by Arizona law and having failed to disclose the existence of stacked coverages to its insureds, Allstate Fire breached its contractual and legal duties to its customers and failed to adjust their claims properly.

5.     Plaintiffs, insureds under Allstate Fire automobile insurance policies, bring this action pursuant to (a) 28 U.S.C. § 2201 & 2202 for a declaratory judgment regarding their rights and the rights of the Class under their Allstate Fire auto insurance policies ("the Allstate Fire Policy" or "the Allstate Fire Policies") and (b) state law based on diversity jurisdiction.

## II.     PARTIES

6.     Plaintiff Morgan Muehlhausen is a resident and citizen of Arizona. She is the daughter of the named insureds Jeffrey and Carrie Muehlhausen.

7.     Plaintiff Berenice Gaytan is a resident and citizen of Arizona.

8.     Plaintiff Russell Wood is a resident and citizen of Arizona.

9.     Defendant Allstate Fire and Casualty Insurance Company is an insurance company incorporated under the laws of Illinois, with its principal place of business in Illinois.

### III.    JURISDICTION AND VENUE

10.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy (including the value of both the disputed claim for $75,000 in stacked coverage and attorneys' fees incurred to date) exceeds $75,000, exclusive of costs and interest, and Plaintiffs and the Defendant are citizens of different states. This Court also has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest, and minimal diversity exists. Plaintiffs are citizens of Arizona, and Allstate Fire is a citizen of Illinois (where it is incorporated and has its principal place of business).

11.    Venue is proper pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to claims arising from this Incident described herein occurred within this District and the Allstate Fire Policies were issued in this District.

12.    Whenever it is alleged in this Complaint that Allstate Fire did any act or thing, it is meant that Allstate Fire and its agents, officers, servants, employees or representatives did such act or thing and when such act or thing was done, it was done with full authorization or ratification of Allstate Fire or was done in the normal and routine course and scope of business, or with the actual, apparent and/or implied authority of Allstate Fire and its officers, agents, servants, employees or representatives. Specifically, Allstate Fire is liable for the actions of its affiliates, officers, agents, servants, employees and representatives.

### IV.    GENERAL ALLEGATIONS AS TO ARIZONA LAW

13.    Arizona's statute governing uninsured motorist ("UM") and underinsured motorist ("UIM") coverages (collectively "UM/UIM coverages") is A.R.S. § 20-259.01. It requires auto insurers to offer UM and UIM coverage on each insured vehicle and governs the terms of that coverage.

14.    Insurance policy provisions that diverge from the explicit terms of A.R.S. § 20-259.01 are void. *See, e.g.*, *Cundiff v. State Farm Mut. Auto. Ins. Co.*, 217 Ariz. 358, 174

P.3d 270 (2008); *Am. Family Mut. Ins. Co. v. Sharp*, 229 Ariz. 487, 277 P.3d 192 (2012). The statute has "a remedial purpose and must be construed liberally in favor of coverage." *Sharp*, 229 Ariz. at 492, 277 P.3d at 197, quoting *Taylor v. Travelers Indem. Co. of Am.*, 198 Ariz. 310, 9 P.3d 1049 (2000).

15.     Subsection (H) of A.R.S. § 20-259.01, as amended in 1997, allows insurers to draft their policies to prohibit stacking of UM/UIM coverages but prescribes a strict method for doing so. Insurers wishing to prohibit stacking must either draft the policy to "contain a statement that informs the insured of the insured's right to select one policy or coverage as required by this subsection," or absent such policy language, "within thirty days after the insurer receives notice of an accident, . . . notify the insured in writing of the insured's right to select one policy or coverage." A.R.S. § 20-259.01(H).

16.     "Subsection (H) is not self-executing; insurers must include policy language incorporating its limitations." *Hanfelder v. GEICO Indem. Co.*, 244 Ariz. 475, 422 P.3d 579 (App. 2018).

17.     The phrase "multiple policies or coverages" in Subsection (H) applies only "when an insured obtains coverages for several vehicles and then attempts to claim multiple [UM or] UIM coverages for the same accident." *Sharp*, 229 Ariz. at 491, 277 P.3d at 196.

18.     "Subsection (H) is not exclusively limited to circumstances where multiple policies exist—it applies to 'multiple policies or coverages.'" *Hoelbl v. GEICO*, No. 1 CA-CV 11-0703, 2012 WL 5589909 (Ariz. App. Nov. 15, 2012), *review denied* (Apr. 23, 2013); *see also GEICO v. Tucker*, 71 F. Supp. 3d 985 (D. Ariz. 2014) (following *Hoelbl*, and explaining that for applying subsection (H) "it did not matter if those multiple vehicles were covered by the same policy or separate policies.").

19.     Under Subsection (H), "[f]ailure to notify an insured of his right to select which policy should apply in an anti-stacking provision in writing, either in the policy itself or within 30 days of any claim, prevents an insurer from limiting [stacking] coverage under Arizona law." *Schwallie v. Am. Family Mut. Ins. Co.*, No. CV-12-00681-PHX, 2013 WL 4478697 (D. Ariz. Aug. 20, 2013) (denying insurer's effort to avoid stacking UIM

coverages). *See also Heaton, et. al v. Metropolitan Group Property and Casualty Ins. Co.*, No. 2:21-CV-00442-SRB (D. Ariz. Oct. 19, 2021) ("[M]ultiple coverages exist when multiple vehicles are insured under a single policy that contains UM/UIM coverage. . . . Having found that Ms. Heaton and Ms. Bell have multiple UM/UIM coverages under the statute by virtue of insuring multiple vehicles, the Court concludes that both Ms. Heaton and Ms. Bell may stack their available coverages because Metropolitan did not adhere to the requirements of A.R.S. § 20-259.01(H) to prevent stacking.").

20.     Implied in every insurance contract in Arizona is a covenant of good faith and fair dealing owed to Plaintiffs. Under the contractual covenant of good faith and fair dealing, an insurer must deal fairly with an insured, giving in all matters equal consideration to the insured's interests. *See, e.g.*, *Rawlings v. Apodaca*, 151 Ariz. 149, 156-57, 726 P.2d 565, 572-73 (1986).

21.     The contractual covenant of good faith and fair dealing also includes an obligation to inform the insureds about the extent of coverage and their rights under the policy and to do so in a way that is not misleading.[2]

## V.     ALLSTATE FIRE IMPROPERLY REFUSES TO DISCLOSE AND STACK PLAINTIFFS' COVERAGE

### A.  Plaintiff Muehlhausen

22.     On January 28, 2021, Mariana Garner, driving a 2018 Honda Accord, exited a private parking lot, attempting to turn left (westbound) onto Williams Field Road.

23.     Plaintiff Muehlhausen was a passenger in a 2009 Ford Focus driven by Colten Jones, eastbound on Williams Field Road.

---

[2] *See, e.g.*, Arizona Administrative Code § 20-6-801(D)(1) ("No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented."); *Nardelli v. Metro. Grp. Prop. and Cas. Ins. Co.*, 230 Ariz. 592, 603, 277 P.3d 789, 800 (App. 2012); *Sarchett v. Blue Shield of Cal.*, 233 Cal. Rptr. 76, 84-86, 729 P.2d 267, 275-77 (1987) ("important facet" of duty of equal consideration is "the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy"); *State Farm Mut. Auto. Ins. Co. v. Shuman*, 175 Ind. App. 186, 370 N.E.2d 941 (1977) (sustaining punitive damages when insurer attempted to induce estate of insured decedent to settle claim without disclosing or explaining all benefits and estate representative "lacked the education and experience to understand the policy terms on her own").

24.     Ms. Garner failed to yield the right of way to Mr. Jones, and the front of Ms. Garner's vehicle collided with the side of Mr. Jones' vehicle.

25.     Ms. Garner was negligent in causing the accident, and she was the sole cause of the accident.

26.     The force of the impact was severe and caused significant injuries to Plaintiff Muehlhausen.

27.     Plaintiff Muehlhausen was wearing a seatbelt at the time of the accident.

28.     Plaintiff Muehlhausen was transported by ambulance from the scene of the accident to Mercy Gilbert Hospital.

29.     Among other things, Plaintiff Muehlhausen sustained substantial injuries to her right shoulder, right knee, right ankle and right hip. Her injuries necessitated medical treatment, including surgeries on her right shoulder and right knee.

30.     Plaintiff Muehlhausen is still in constant pain because of the injuries she sustained in the accident. Plaintiff Muehlhausen suffers from persistent pain in her right shoulder and right knee, including popping, clicking, weakness, swelling, and stiffness in both joints and other physical degeneration. She cannot sit, stand, or drive for long periods, sleep normally, bathe normally, and do other normal daily activities she was accustomed to before the accident.

31.     To date, Plaintiff Muehlhausen has incurred over $381,826 in medical bills because of the injuries she suffered in the accident and related treatment.

32.     At the time of the accident, Ms. Garner was insured under a Nationwide Insurance auto policy with $25,000 in per-person bodily injury liability coverage. Nationwide tendered, and Plaintiff accepted, this policy limit.

33.     Plaintiff Muehlhausen's damages are significantly greater than $25,000.

34.     Given the severity of Plaintiff Muehlhausen's injuries from the accident and the resultant damages, Ms. Garner was underinsured as to Plaintiff. *See* A.R.S. § 20-259.01(G).

35.     At the time of the accident, Mr. Jones' vehicle was insured under an Encompass auto policy with $100,000 in per-person UIM coverage. Encompass tendered, and Plaintiff accepted, this policy limit.

36.     Allstate Fire is not entitled to an offset for the Encompass UIM policy limit. *See Cundiff*, 174 P.3d at 272 (under A.R.S. § 20-259.01, the underlying liability limits are "the only amount deducted from the insured's total damages when calculating UIM coverage," even if that means duplicate recovery to insured); *Miller v. American Standard*, 759 F. Supp. 2d 1144, 1147-49 (D. Ariz. 2010) (applying *Cundiff* to medical payments coverage, despite duplicate recovery to insured). In any event, Plaintiff Muehlhausen's damages are significantly greater than $125,000, which is the combined total of Ms. Garner's bodily injury liability limit and Mr. Jones' UIM limit.

37.     To protect their family members (as well as themselves and others in their vehicles) from uninsured or underinsured tortfeasors, Plaintiff Muehlhausen's parents, Jeffrey and Carrie Muehlhausen, purchased UM/UIM insurance through Allstate Fire. The Allstate Fire Policy listed Plaintiff Muehlhausen as a covered driver. At the time of loss, Plaintiff Muehlhausen was insured under an Allstate Fire auto insurance policy (Copy of Policy No. 816 260 850, "the Allstate Fire Policy," attached as Exhibit 1). The Allstate Fire Policy insured four vehicles: a 2012 Mazda 6, VIN 1YVHZ8DH5C5M02234, a 2016 Kia Sorento, VIN 5XYPK4A57GG120750, a 2016 Kia Rio, VIN KNADM4A39G6654652, and a 2014 Hyundai Accent, VIN KMHCT4AE2EU664768. Each vehicle's coverage provided Plaintiff Muehlhausen with UIM benefits of $25,000 per person and $50,000 per occurrence.

38.     Plaintiff Muehlhausen's damages attributable to Ms. Garner's fault exceed the combined amount of Ms. Garner's bodily injury liability coverage, Mr. Jones' UIM limit, and the stacked UIM coverages on the four vehicles insured under the Allstate Fire Policy.

39.     In the Allstate Fire Policy, Allstate Fire agreed to pay as follows:

If a premium is shown on the Policy Declarations for Uninsured Motorists - Insurance, we will pay damages which an insured person is legally entitled to recover from the owner or operator of an uninsured auto because of bodily injury sustained by an insured person.

If a premium is shown on the Policy Declarations for Underinsured Motorists Insurance, we will pay damages which an insured person is legally entitled to recover from the owner or operator of an underinsured auto because of bodily injury sustained by an insured person.

40.     Plaintiff Muehlhausen's counsel, David Wattel, notified Allstate Fire in writing on April 19, 2021, that his firm was representing Plaintiff Muehlhausen for the injuries she sustained in the accident, including UM/UIM claims. Exhibit 2.

41.     Allstate Fire responded by letter dated April 22, 2021. Exhibit 3.

42.     Allstate Fire did not notify Plaintiff Muehlhausen of her right to select one policy or coverage within 30 days after Allstate Fire received notice of the accident.

43.     On April 27, 2022, Plaintiff Muehlhausen, through her counsel, sent Allstate Fire a letter by certified mail documenting Plaintiff Muehlhausen's UIM claim and damages, citing Arizona legal authorities addressing stacking, making a demand for stacked limits, and stating in relevant part: "In light of my client's multi-vehicle policy, and Allstate Fire's failure to advise her of her right to select among coverages (either in the policy or within 30 days of the loss), my client is entitled to stack coverage for each vehicle [covered in the policy]. Allstate Fire now has an opportunity to fulfill its contractual obligations. We hereby demand and expect prompt payment of the four $25,000.00 UIM limits for each vehicle under the policy, for a total of $100,000.00." Exhibit 4.

44.     On May 16, 2022, Allstate Fire denied Plaintiff Muehlhausen's demand for stacked UIM coverages by sending Plaintiff Muehlhausen's counsel a letter and email, with the same content, both contending: "Pursuant to A.RS. § 20-259.01 (H), we are hereby giving notice that your Allstate Fire policy contains an anti-stacking provision that limits Uninsured/Underinsured ("UM/UIM") coverage to only one vehicle under the policy. We are notifying you that if multiple policies or coverages purchased from Allstate Fire or an

affiliated company exist on different vehicles and provide UM/UIM coverage which apply to this accident, you have the right to select the policy or coverage that you would like applied to this accident. Only one policy or coverage selected shall apply to this accident and no coverage will be provided by any of the other policies or coverages issued by Allstate Fire and its affiliated companies." Exhibits 5 & 6.

45.     Allstate Fire did not notify Plaintiff Muehlhausen or any other class member that if the foregoing notice was not sent within thirty days of the accident, Allstate Fire would, under Arizona law, owe to its insureds stacking of their various UM/UIM coverages unless the policy language itself satisfied the obligation owing under A.R.S. § 20-259.01(H), which is not the case here or for any other class member.

46.     On June 1, 2022, Allstate Fire sent Plaintiff Muehlhausen's counsel a letter tendering only a single UIM coverage limit of $25,000 and stating that on receipt of information on medical liens, the adjuster would "e-mail the release and order the settlement check." Exhibit 7.

47.     On June 24, 2022, Plaintiff Muehlhausen's counsel sent Allstate Fire a letter providing the information Allstate Fire had requested about medical liens. Exhibit 8.

48.     On June 27, 2022, Allstate Fire sent Plaintiff Muehlhausen's counsel a letter enclosing payment of $25,000. Exhibit 9.

**B. Plaintiff Gaytan**

49.     On January 28, 2020, Michael Ortiz, driving a 2014 Jeep Compass, traveling northbound on 75th Avenue, attempted to turn left onto Van Buren.

50.     Plaintiff Berenice Gaytan was the driver of a 2017 Chevrolet Malibu traveling southbound on 75th Avenue.

51.     Mr. Ortiz failed to yield the right-of-way to Plaintiff Gaytan and the front of Mr. Ortiz's vehicle collided with Plaintiff's vehicle.

52.     Mr. Ortiz was negligent in causing the accident, and he was the sole cause of the accident.

53.     The force of the accident caused significant injuries to Plaintiff Gaytan.

54.     Plaintiff Gaytan was wearing a seatbelt at the time.

55.     Plaintiff Gaytan was transported by ambulance to Banner Estrella Medical Center.

56.     Plaintiff Gaytan sustained a head injury and substantial injury to her back.

57.     Plaintiff Gaytan is still suffering from back pain and severe headaches because of the injuries she sustained in the accident.

58.     To date, Plaintiff Gaytan has incurred over $48,000 in medical bills because of the injuries she suffered in the accident and related treatment.

59.     At the time of the accident, Mr. Ortiz was insured under a State Farm Mutual Automobile Insurance Company ("State Farm") auto policy with $25,000 in per-person bodily injury liability coverage. State Farm tendered, and Plaintiff accepted, this policy limit.

60.     At the time of the accident, Mr. Ortiz held a second liability policy with American Family Insurance. American Family Insurance tendered policy limits of $25,000 to Plaintiff, which she accepted.

61.     Plaintiff Gaytan's total damages are significantly greater than $50,000.

62.     Given the severity of Plaintiff Gaytan's injuries from the accident and the resultant damages, Mr. Ortiz was underinsured as to Plaintiff. *See* A.R.S. § 20-259.01(G).

63.     To protect her family members (as well as herself and others in her vehicles) from uninsured or underinsured tortfeasors, Plaintiff Gaytan purchased UM/UIM insurance through Allstate Fire. The Policy listed Plaintiff Gaytan as a covered driver. The Policy insured two vehicles: a 2017 Chevrolet Malibu, VIN 1G1ZB5ST7HF141722 and a 1990 Infiniti M30, VIN JNKHF14C6LT003725. Each vehicle's coverage provided Plaintiff Gaytan with UIM benefits of $15,000 per person and $30,000 per occurrence. Allstate Fire tendered and paid a $15,000 policy limit on only one of the two UIM coverages.

64.     Plaintiff Gaytan's damages attributable to Mr. Ortiz's fault exceed the combined amount of Mr. Ortiz's bodily injury liability coverage, and the stacked UIM coverages on the two vehicles insured under the Allstate Fire Policy.

65.    Allstate Fire did not notify Plaintiff Gaytan of her right to select one policy or coverage within 30 days after Allstate Fire received notice of the accident.

66.    Allstate Fire did not notify Plaintiff Gaytan or any other class member that if the foregoing notice was not sent within thirty days of the accident, Allstate Fire would, under Arizona law, owe to its insureds stacking of their various UM/UIM coverages unless the policy language itself satisfied the obligation owing under A.R.S. § 20-259.01(H), which is not the case here or for any other class member.

67.    On May 25, 2021, Allstate Fire sent Plaintiff's counsel a letter enclosing payment of $15,000.

**C. Plaintiff Wood**

68.    On March 30, 2018, Jaycob Ford, driving a 2008 Kia Spectra, was traveling southbound on Val Vista making a left turn into a private driveway when he failed to yield the right-of-way.

69.    Plaintiff Russell Wood was the operator of a 2001 Harley Davidson motorcycle traveling northbound on Val Vista. Mr. Ford's vehicle collided with Mr. Wood's motorcycle.

70.    Mr. Ford was negligent in causing the accident and he was the sole cause of the accident.

71.    Plaintiff Wood was seriously injured in the collision and was transported by ambulance to Banner Desert.

72.    The force of the accident caused significant injuries to Plaintiff Wood. Plaintiff Wood dislocated his left shoulder and right hip. Plaintiff Wood's right wrist was shattered, and his left collarbone, pelvis and several ribs were broken. During recovery he got a clot in his right leg. He still wears compression socks every day. He cannot lift his left arm above chest height and only has 40% grip strength in his right hand. His injuries required multiple surgeries and physical therapy.

73.    Plaintiff Wood was transported by ambulance to Banner Desert Medical Center.

74.    To date, Plaintiff Wood has incurred over $300,000 in medical bills because of the injuries he suffered in the accident and related treatment.

75.    Before the crash, Plaintiff Wood ran his own security technology business. Following the crash, Plaintiff Wood can no longer do his own installations and has had to hire someone to install for him.

76.    At the time of the accident, Mr. Ford was insured under an auto policy with $15,000 in per-person bodily injury liability coverage.

77.    Mr. Ford's insurer tendered, and Plaintiff Wood accepted, this policy limit.

78.    Plaintiff Wood's damages are significantly greater than $15,000.

79.    Given the severity of Plaintiff's injuries from the accident and the resultant damages, Mr. Ford was underinsured as to Plaintiff Wood. *See* A.R.S. § 20-259.01(G).

80.    At the time of the accident, Plaintiff Wood was living with his parents. Mr. Wood's parents had two vehicles (a 2014 Toyota Avalon and a 2017 Toyota RAV4) insured under an Allstate Fire and Casualty Insurance policy with UIM benefits of $100,000 per person (Policy No. 000838145330). Allstate Fire tendered and paid a $100,000 policy limit on only one of the two UIM coverages. Allstate Fire also caused Mr. Wood to execute a document on August 17, 2018, which purported to release Allstate's "liability" and "contractual obligations" under the UM/UIM coverages for this (and only this policy) for the accident on or about March 30, 2018. Such a release is unlawful, void, contrary to public policy, and otherwise ineffective because, among other things, it was furnished and executed as a condition of receiving partial insurance benefits to which the insured was already entitled and because Arizona law does not countenance the release of claims of bad faith insurance practices as a condition of receiving policy benefits.

81.    Plaintiff Wood also was entitled to UM/UIM coverage under a policy he purchased from Allstate Property and Casualty Insurance Company (Policy No. 838501429). His policy provided Plaintiff Wood with UIM benefits of $15,000 per person, which was paid to him as a result of a claim he made to the Allstate claims department, which also handles claims for Allstate Fire.

82.     Allstate Fire and Casualty Insurance Company is not entitled to an offset for the Allstate Property and Casualty Insurance Company UIM policy limit. *See Cundiff,* 174 P.3d at 272 (under A.R.S. § 20-259.01, the underlying liability limits are "the only amount deducted from the insured's total damages when calculating UIM coverage," even if that means duplicate recovery to insured); *Miller v. American Standard*, 759 F. Supp. 2d 1144, 1147-49 (D. Ariz. 2010) (applying *Cundiff* to medical payments coverage, despite duplicate recovery to insured). In any event, Plaintiff's damages are significantly greater than $130,000, which is the combined total of Mr. Ford's liability coverage and the payments to Mr. Wood under his and his parents' UIM coverages.

83.     In addition to the foregoing UM/UIM policies, Plaintiff Wood also purchased UM/UIM coverage under another policy he purchased for himself from Allstate Fire (Policy No. 000836554550) to cover his own vehicle, a 2016 Toyota RAV4. The Allstate Fire Policy listed Plaintiff Wood as the named insured and provided coverage on March 30, 2018, the date of the Wood injury. Despite receiving notice of Plaintiff Wood's UIM claim under two other policies through its centralized claims department, Allstate failed to notify Plaintiff Wood of this coverage or tender any payment of UIM benefits to Plaintiff Wood under this coverage.

84.     Plaintiff's damages attributable to Mr. Ford's fault exceed the combined amount of Mr. Ford's bodily injury liability coverage and the stacked UIM coverages for both (1) the two vehicles insured under his parents' Allstate Fire Policy and (2) the two vehicles insured under Mr. Wood's own policies with Allstate Fire and Allstate Property and Casualty Insurance Company.

85.     Because of the extent of his damages, Plaintiff Wood should have benefited from and received the entirety of the UIM benefits under his own Allstate Fire Policy No. 000836554550 and his parents' Policy No. 000838145330.

86.     Allstate did not offer or make available these benefits despite failing to notify Plaintiff Wood of his right to select one policy or coverage within 30 days after Allstate Fire received notice of the accident.

87.     Allstate Fire did not notify Plaintiff Wood or any other class member that if the foregoing notice was not sent within thirty days of the accident, Allstate Fire would, under Arizona law, owe to its insureds stacking of their various UM/UIM coverages unless the policy language itself satisfied the obligation owing under A.R.S. § 20-259.01(H), which is not the case here or for any other class member.

**D. Allstate Fire's policies and disclosures do not comply with A.R.S. § 20-259.01(H).**

88.     The Allstate Fire Policies under which Plaintiffs were insured are Allstate Fire's standard form Policy for personal (i.e., non-commercial) auto policies.

89.     The Allstate Fire Policies fail to include a statement informing the insureds of their right to select one policy or coverage as applicable to any one accident. As used herein, "the Allstate Fire Policy" or the "Allstate Fire Policies" means any personal auto policy issued to an Arizona insured, all of which fail to include a statement informing the insureds of their right to select one UM/UIM coverage, as between multiple vehicles insured under the Policy, in the event of a covered accident.

90.     The Allstate Fire Policies do not comply with A.R.S. § 20-259.01(H) because (a) they not limit the UM/UIM coverage on each covered vehicle so only one policy or coverage, selected by the insured, shall be applicable to any one accident, and (b) they do not inform the insured of their right to select one UM/UIM coverage, as between multiple vehicles insured under the Policy, in the event of a covered accident. They merely that the limit of liability for Uninsured and Underinsured Motorist Coverage is "shown on the Policy Declarations," no matter how many vehicles are listed, and then purport to explain that these provisions mean that stacking is not allowed:

Limit Of Liability

The coverage limit shown on the Policy Declarations for:

1.     "each person" is the maximum that we will pay for damages arising out of bodily injury to one person in any one motor vehicle accident. including damages sustained by anyone else as a result of that bodily injury.

2.      "each accident" is the maximum we will pay for damages arising out of all bodily injury in any one motor vehicle accident. This limit is subject to the limit for "each person".

These limits are the maximum we will pay for any one motor vehicle accident regardless of the number of:

1.      premiums paid;

2.      premiums shown on the Policy Declarations;

3.      claims made;

4.      vehicles or persons shown on the Policy Declarations; or vehicles involved in the accident.

THIS MEANS THAT NO STACKING OR AGGREGATION OF UNINSURED MOTORISTS INSURANCE WHATSOEVER WILL BE ALLOWED BY THIS POLICY.

The Uninsured Motorists Insurance limits apply to each insured auto as shown on the Policy Declarations.

If none of the autos shown on the Policy Declarations is involved in the accident, the highest limits of liability shown on the Policy Declarations for any one auto will apply.

91.     The declarations page of the Allstate Fire policy also does not inform the insureds of their right to select one policy or coverage. It merely states, "The limits of liability shown on your Policy Declarations are the maximum Allstate Fire will pay for any single accident."

92.     Allstate Fire also did not, within thirty days of being notified of the accidents at issue here, send Plaintiffs or any other insured under the Policy any written notice of Plaintiffs' right to select one policy or coverage to apply.

93.     As a general practice, whenever Allstate Fire fails to comply with its statutory obligation to advise its insureds in writing within 30 days after receiving notice of an accident that they have a right to select one policy or coverage, Allstate Fire does not provide stacked benefits unless specifically requested by the insured to do so.

94.     These were simple options—informing the insureds of their rights in the policy itself or by written notice within 30 days after notice of the accidents—and either

approach would have precluded stacking the UM/UIM coverages on class members' vehicles covered under the Allstate Fire Policies.

95.     Allstate Fire, having failed to avail itself of either option under Arizona law, must stack the UM/UIM coverages for multiple vehicles insured under the Allstate Fire Policies.

96.     Allstate Fire never disclosed or provided stacked UIM coverages to Plaintiffs. Allstate Fire, therefore, has denied Plaintiffs benefits to which they are entitled under the Allstate Fire Policy and Arizona law.

97.     As a general practice, Allstate Fire does not disclose or provide stacked UM/UIM coverages to Plaintiffs or class members under the Allstate Fire Policies after a covered accident. Allstate Fire has provided stacked limits to insureds who specifically requested it to do so, in effect silencing the squeaky wheels while continuing to underpay Plaintiffs and virtually all class members in violation of its contractual and legal duties as a first-party insurer.

98.     Allstate Fire knew or should have known that its policy interpretation and failures to disclose and pay stacked UM/UIM coverages violated Arizona law.

99.     Allstate Fire knew of the requirements of A.R.S. § 20-259.01(H), which have been in place since 1997.

100.     Allstate Fire chose not to comply with those requirements. For example, Allstate Fire sent Plaintiff Muehlhausen a letter more than 30 days after it received notice of the accident that purported to notify her that stacking was unavailable, but this attempted notice was untimely and ineffective. It served only as an attempt to mislead Plaintiff Muehlhausen about her rights, conceal Allstate Fire's knowledge of Arizona law on stacking, and evade Allstate Fire's responsibility to provide stacked coverages.

101.     Many other Arizona auto insurers (*e.g.*, Farmers, Bristol West, Progressive, USAA, State Farm, GEICO, Auto Owners and United) have drafted their auto policies (including single and multi-vehicle policies) to notify their insureds in writing of the right

to select which policy or coverage will apply.[3] For example, the Bristol West policy provides:

> The limit of liability under this Part C is not increased if more than one vehicle is covered under this policy.
>
> In no event shall the limit of liability for two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available as Uninsured Motorist Coverage or Underinsured Motorist Coverage benefits.
>
> If multiple policies or coverages purchased from us by an insured person on different vehicles provide Uninsured Motorist Coverage or Underinsured Motorist Coverage to an accident or claim, then the insured person shall select one of these policies or coverages to apply. Only one coverage selected by the insured person shall apply.

102. Other insurers (*e.g.*, Safeco) notify their insureds in writing of the right to select which policy or coverage will apply, by letter within 30 days after notice of an accident. *See* Exhibit 11.

103. Allstate Fire knew or should have known of the efforts by other Arizona auto insurers to comply with A.R.S. § 20-259.01(H).

104. Allstate Fire chose not to follow those practices.

105. Allstate Fire describes stacking benefits on its web site as follows (Exhibit 12):

> **Stacking on one car insurance policy**
>
> Some states allow stacking UM and UIM coverage limits within a single car insurance policy.
>
> For example: You insure two vehicles on the same policy. You have uninsured motorist bodily injury (UMBI) coverage limits of $25,000 on each vehicle.
>
> Stacking your coverage within that policy would increase your UMBI limits to $50,000 per accident. So, if you were hit by a driver without

---

[3] See policy excerpts attached as Exhibit 10.

insurance, your insurer would help pay your medical expenses after the accident, up to $50,000.

Stacked vs. Unstacked car insurance
https://www.allstate.com/resources/car-insurance/stacked-vs-unstacked-car-insurance

106.    Allstate Fire on limited occasions in Arizona has acknowledged, tendered or paid stacked UM or UIM limits when requested by the insured to do so.

107.    Despite having paid stacking claims in Arizona, Allstate Fire's web site lists thirty-two states that "as of May 2020 . . . may allow stacking," but omits Arizona from the list. *See* Exhibit 12.

108.    Allstate Fire failed to pay Plaintiffs and the Class stacked UM/UIM coverages to which they were entitled.

109.    Allstate Fire failed, as to Plaintiffs and the Class, to investigate, identify, acknowledge and disclose the existence of stacked UM/UIM coverages under the Allstate Fire Policies.

110.    Allstate Fire and its agents violated Administrative Code § 20-6-801(D)(1) and (D)(2) by failing to investigate, identify, acknowledge, and disclose stacked UM/UIM coverages under the Allstate Fire Policies.

111.    On information and belief, Allstate Fire received legal advice that its policy language and failure to give proper notice violated Arizona law, but Allstate Fire disregarded the advice it received and willfully failed to investigate and inform itself on Arizona law on stacked UM/UIM coverages, as to Plaintiffs and the Class.

112.    On information and belief, Allstate Fire received legal advice regarding its obligations to provide stacked UM/UIM coverages and was advised that its failures to pay stacked UM/UIM coverages likely violated Arizona law. Allstate Fire disregarded that legal advice.

113.    On information and belief, Allstate Fire willfully concealed the existence of stacked UM/UIM coverages from Plaintiffs and the Class.

114.    Allstate Fire has nonetheless failed to search and reopen its closed claim files to identify, adjust and pay stacked UM or UIM benefits it owes under Arizona law. Any insured who received the maximum amount of a single UM/UIM policy limit and who had other vehicles or policies providing UM/UIM coverage would be entitled to notice of the additional coverage available and doubtless entitled to additional benefits.

115.    Instead, when paying UM or UIM benefits, Allstate Fire has a practice of attempting to evade and discourage any subsequent requests for stacked limits by requesting the insured sign a release of all claims in exchange for the payment. Allstate Fire does so despite knowing the insured is entitled to the payment without signing a release, and that it will issue payment of that benefit even if the insured declines to execute the release.

116.    Allstate Fire's failures are both unreasonable, intentional, and in conflict with well-established Arizona law.

117.    Allstate Fire's failures also violate its duty to find coverage, to reasonably investigate the claim, disclose the proper law and facts, and not misrepresent or conceal pertinent policy provisions and benefits available under its policies.

118.    Allstate Fire's concealment of its statutory obligation and its actual coverage limits, and its unreasonable and unlawful refusal to investigate, identify, acknowledge, disclose and pay stacked UM/UIM coverages, have led to underpaying Plaintiff's UIM claim, as well as the claims of hundreds or thousands of other UM/UIM claims, and thus to Allstate Fire paying tens or hundreds of millions of dollars less for UM and UIM claims than its insureds are entitled to under the terms of their standardized policies and Arizona law.

## VI.    CLASS ACTION ALLEGATIONS

119.    This action is brought and may properly be maintained as a class action, as it satisfies the numerosity, commonality, typicality, and adequacy requirements of Federal Rule of Civil Procedure 23. Plaintiffs bring all claims herein individually and as a class action (for the class defined below), pursuant to Rule 23.

120.   The class consists of the following:

All persons insured under one or more Allstate Fire Policies issued in Arizona to the same purchaser covering them for multiple vehicles at the time of a covered loss who, from the earliest allowable time to the date judgment enters, received UM/UIM benefits in an amount equal to the limits of only one of the UM/UIM coverages under the applicable policy or policies where the purchaser was not notified in writing by Allstate Fire within thirty days after it received notice of the accident of the purchaser's right to select one policy or coverage.

121.   While the exact number of members cannot be determined, the class consists at least hundreds of Arizona residents. The members of the class are therefore so numerous that joinder of all members is impracticable. The exact number of class members can readily be determined by documents produced by Allstate Fire.

122.   There are questions of fact and law common to the class, including the following:

i.   Whether the Allstate Fire Policy complies with Subsection (H) of A.R.S. § 20-259.01, allowing Allstate Fire to preclude stacking;

ii.   Whether Allstate Fire failed to send timely notice to its insureds after an accident of their right to select one UM/UIM policy or coverage;

iii.   Whether Allstate Fire concealed or failed to investigate, identify, acknowledge and disclose the existence of stacked UM/UIM coverages under the Allstate Fire Policies;

iv.   Whether Allstate Fire failed to stack UM/UIM policies or coverages;

v.   Whether, through the foregoing practice, Allstate Fire breached its contracts with its insureds;

vi.   Whether, through the foregoing practice, Allstate Fire breached the implied covenant of good faith and fair dealing and violated statutes governing unfair claims settlement practices including A.R.S. § 20-461, and Arizona Administrative Code § 20-6-801(D)(1) and (D)(2);

vii.   Whether, through the foregoing practice, Allstate Fire caused and will continue to cause harm to its insureds;

viii.   Whether Allstate Fire is obligated to search or reopen its closed claim files to identify, adjust and pay stacked UM or UIM benefits it owes under Arizona law;

ix.     Whether Plaintiffs and the Class are entitled to declaratory relief;

x.      Whether Allstate Fire has an unlawful practice of attempting to evade and discourage any subsequent requests for stacked limits by requesting the insured sign a release of all claims in exchange for the payment;

xi.     Whether Allstate Fire, through its centralized claims department, has an unlawful practice of concealing or failing to investigate, identify, acknowledge and disclose the existence of UM/UIM coverages under policies issued to a single insured by both Allstate Fire and Allstate Property and Casualty Insurance Company or related Allstate entities where each such policy would provide UM/UIM benefits, stacked or otherwise, to a particular loss;

xii.    Whether Allstate Fire's above-referenced conduct as to the Class warrants an award of punitive damages; and

xiii.   Whether Plaintiffs and the class are entitled to an award of attorney's fees.

123.    Plaintiffs have the same interests in this matter as all other members of the class, and their claims are typical of those of all members of the class. Plaintiffs' claims are coincident with and not antagonistic to those of other class members they seek to represent. Plaintiffs and all class members have been harmed by Allstate Fire's common course of conduct as outlined herein. The harm to each class member was caused by Allstate Fire's wrongful conduct.

124.    Plaintiffs are committed to pursuing this action and has retained competent class counsel experienced in insurance litigation and class action litigation. Plaintiffs will fairly and adequately represent the interests of the class members.

125.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(1)(A) because separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

126.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because Allstate Fire's actions are generally applicable to the class as a whole, and Plaintiffs seek, inter alia, equitable remedies with respect to the class as a whole.

127.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because the questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

128.    Class certification is appropriate under Federal Rule of Civil Procedure 23(c)(4) because resolution of a key fact issue common to the Class—did Allstate Fire's conduct constitute bad faith under Arizona law—will materially advance the litigation.

129.    Absent a class action, most of the members of the class will remain ignorant of their rights and/or find the cost of litigating their claims prohibitive. Therefore, they will have no effective remedy. The class treatment of common questions of law and fact conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication. Allstate Fire has concealed, failed to disclose or misled class members about their rights and those class members will remain ignorant of their potential claims against Allstate Fire unless court-supervised notice is ordered.

130.    Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions involving the insurance industry. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of other respective Class members and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of other members of the Class.

### FIRST CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT)

131.    Plaintiffs incorporate by reference all prior allegations in this Complaint as if fully set forth herein.

132.    Plaintiffs and the Class have standing to seek this relief because there is an actual controversy between the parties as to the proper interpretation and enforceability of the Allstate Fire Policies under Arizona law, the application of A.R.S. § 20-259.01(H) to this case, Allstate Fire's obligation to disclose the existence of stacked UM/UIM

coverages, and whether Plaintiffs and the Class are entitled to stack UM/UIM coverages for multiple insured vehicles.

133.    Under the circumstances, Plaintiffs and the Class are entitled to a judicial declaration of their rights under the Allstate Fire Policies, specifically that they are entitled to stack UM/UIM coverages for multiple insured vehicles under the Allstate Fire Policies, that Allstate Fire was required to disclose the existence of stacked coverages to them, and that Allstate Fire was required to search and reopen its closed claim files to identify, adjust and pay stacked UM or UIM benefits once it knew its Allstate Fire Policies and its practices did not allow it to preclude stacking under Arizona law.

134.    This claim arises out of contract and Plaintiffs and the Class therefore are entitled to attorney's fees under A.R.S. § 12-341.01.

**SECOND CLAIM FOR RELIEF**
**(BREACH OF CONTRACT)**

135.    Plaintiffs incorporate by reference all prior allegations in this Complaint as if fully set forth herein.

136.    Each Class member (including Plaintiffs) is a party to one or more of the standardized Allstate Fire Policies.

137.    Allstate Fire further breached those contracts by concealing or failing to identify, acknowledge, disclose, and pay the stacked UM/UIM limits of the Allstate Fire Policies under Arizona law, despite Allstate Fire's failure to comply with A.R.S. § 20-259.01(H), and by denying the existence of any such stacked limits.

138.    The Class (including Plaintiffs) has been and continues to be damaged by Allstate Fire's breaches of contract.

139.    This claim arises out of contract and Plaintiffs and the Class therefore are entitled to attorney's fees under A.R.S. § 12-341.01.

## THIRD CLAIM FOR RELIEF
### (BAD FAITH AS TO THE CLASS)

140.    Plaintiffs incorporate by reference all prior allegations in this Complaint as if fully set forth herein.

141.    Inherent and implied in the Allstate Fire Policy is a covenant of good faith and fair dealing owed to Plaintiffs. Under the duty of good faith and fair dealing, an insurer must deal fairly with an insured, giving equal consideration in all matters to the insured's interests. *See, e.g., Rawlings v. Apodaca*, 151 Ariz. 149, 156-57, 726 P.2d 565, 572-73 (1986).

142.    The tort of bad faith arises when an insurer "intentionally denies, fails to process or pay a claim without a reasonable basis." *Noble v. Nat'l Am. Life Ins. Co*., 128 Ariz. 188, 190, 624 P.2d 866, 868 (Ariz. 1981); *Wood v. Liberty Mut. Fire Ins. Co*., No. CV-11-2380-PHX-GMS, 2012 WL 2798761, at *2 (D. Ariz., July 09, 2012). "The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Zilisch v. State Farm Mut. Auto. Ins. Co*., 995 P.2d 276, 280 (Ariz. 2000). Bad faith can be established by showing "(1) the absence of a reasonable basis for denying benefits, and (2) the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Wood*, 2012 WL 2798761, at *2. In addition, under Arizona law, bad faith can be established by showing that the insurer lacked a "founded belief" for its actions because of an inadequate investigation. *Rawlings*, 151 Ariz. At 160, 726 P.2d at 576.

143.    The duty of good faith and fair dealing also includes, among other things, an obligation to inform the insureds about the extent of coverage and their rights under the policy and to do so in a way that is not misleading. *See, e.g., Nardelli v. Metro. Grp. Prop. And Cas. Ins. Co*., 230 Ariz. 592, 603, 277 P.3d 789, 800 (App. 2012); *Sarchett v. Blue Shield of Cal.*, 233 Cal. Rptr. 76, 729 P.2d 267, 275-77 (1987) ("important facet" of duty

of equal consideration is "the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy"); *State Farm Mut. Auto. Ins. Co. v. Shuman*, 175 Ind. App. 186, 370 N.E.2d 941 (1977) (sustaining punitive damages when insurer attempted to induce estate of insured decedent to settle claim without disclosing or explaining all benefits and estate representative "lacked the education and experience to understand the policy terms on her own").

144.    Allstate Fire acted objectively and subjectively unreasonably as to the Class by concealing, or failing to identify, acknowledge, disclose and pay benefits up to the stacked UM/UIM limits of the Allstate Fire Policies, despite Allstate Fire's failure to comply with A.R.S. § 20-259.01(H).

145.    Allstate Fire did so, even though it knew or should have known the Allstate Fire Policies failed to comply with A.R.S. § 20-259.01(H). The Class seeks as damages the value of the unpaid UM/UIM stacking benefits under Arizona law.

146.    Allstate Fire, therefore, acted in bad faith toward Plaintiffs and the Class.

147.    Allstate Fire's conduct as to the Class was aggravated, outrageous and consciously disregarded an unjustifiably substantial risk of significant harm to its insureds who are Class members.

148.    Allstate Fire is, therefore, liable to the Class for punitive damages.

149.    This claim arises out of contract and the Class therefore is entitled to attorney's fees may have attorney's fees under A.R.S § 12-341.01.

## FOURTH CLAIM FOR RELIEF
## (INDIVIDUAL DAMAGES FOR BAD FAITH)

150.    Plaintiffs incorporate by reference all prior allegations in this Complaint as if fully set forth herein.

151.    Allstate Fire acted objectively and subjectively unreasonably as to Plaintiffs by concealing, or failing to identify, acknowledge, disclose and pay benefits up to the stacked UM/UIM limits of the Allstate Fire Policies, despite Allstate Fire's failure to comply with A.R.S. § 20-259.01(H).

152.   Allstate Fire's conduct and failure to provide additional UIM benefits was in bad faith, and Plaintiffs were thereby damaged.

153.   Allstate Fire's conduct was aggravated, outrageous and consciously disregarded an unjustifiably substantial risk of significant harm to Plaintiffs.

154.   Allstate Fire is, therefore, liable to Plaintiffs for punitive damages.

155.   This claim arises out of contract and Plaintiffs therefore are entitled to attorney's fees under A.R.S § 12-341.01.

## PRAYER FOR RELIEF

THEREFORE, Plaintiffs pray for judgment against Allstate Fire as follows:

A.   An order appointing Plaintiffs as class representatives and Robert Carey and David Wattel as class counsel, and certifying the First and Second Claims for Relief under Rule 23(b)(2), and/or (b)(3), and the Third Claim for Relief under (c)(4).

B.   A declaratory judgment that Plaintiffs and the Class are entitled to stacked UM/UIM coverages under the Allstate Fire Policies, and a declaration establishing or order mandating that the Class is entitled to disclosure of the existence of stacked coverages.

C.   Judgment in favor of Plaintiffs and the Class on their Claims for Relief.

D.   Compensatory damages (class) in an amount to be proven at trial, on the Second and Third Claims for Relief.

E.   Compensatory damages (individual) in an amount to be proven at trial, on the Fourth Claim for Relief.

F.   Attorney's fees pursuant to any applicable authority including but not limited to A.R.S § 12-341.01.

G.   For costs incurred herein.

H.   Pre-judgment and post-judgment interest.

I.   Punitive damages in an amount to be proven at trial, on the Third and Fourth Claims for Relief.

J.   For any other relief permitted by Law.

1    Plaintiffs demand a jury trial pursuant to Federal Rule of Civil Procedure 38 for all

2    actions so triable.

1    Dated: October 12, 2022        Respectfully submitted by,

2                                HAGENS BERMAN SOBOL SHAPIRO LLP

By: *s/ Robert. B. Carey*
     Robert B. Carey
     John M. DeStefano
     11 West Jefferson Street, Suite 1000
     Phoenix, Arizona 85003
     Telephone: (602) 840-5900
     Facsimile: (602) 840-3012
     Email:  rob@hbsslaw.com
     Email:  johnd@hbsslaw.com

*Attorneys for Plaintiffs*

WATTEL & YORK

By: *s/ David E. Wattel*
     David E. Wattel (SBN 012405)
     Michael L. York (SBN 015362)
     2175 North Alma School Road, Suite B.107
     Chandler, Arizona 85224
     Telephone: (480) 222-2020
     Facsimile: (480) 899-2741
     Email: ME-Maricopa@wattelandyork.com

*Attorneys for Plaintiff Muehlhausen*

TOBLER LAW. P.C.

By: *s/ Maren Tobler Hanson*
     Maren Tobler Hanson (SBN 021361)
     4824 E Baseline Road, Suite 109
     Mesa, Arizona 85206
     Telephone: (480) 898-9700
     Facsimile: (480) 464-1172
     Email:  litigation@toblerlaw.com

*Attorneys for Plaintiffs Gaytan and Wood*