Monica Renee Thompson (031575)
DENTONS US LLP
2398 E Camelback Road
Suite 850
Phoenix, AZ 85016-9007
602-508-3968
monica.thompson@dentons.com

***Attorneys for Defendant***

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Morgan Muehlhausen, an individual, Berenice Gaytan, an individual, Russell Wood, an individual, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>Allstate Fire and Casualty Insurance Company, an Illinois Corporation,<br><br>Defendant. | Case No. 2:22-cv-01747-JAT<br><br>**DEFENDANT'S UNOPPOSED MOTION TO STAY AND MEMORANDUM IN SUPPORT** |

Defendant Allstate Fire and Casualty Insurance Company ("Defendant") respectfully moves for a stay of all proceedings in this matter, including Defendant's responsive pleading obligations, pending the Arizona Supreme Court's ultimate disposition on the district court's request to accept and decide the certified questions proposed in *Franklin v. CSAA Gen. Ins. Co., No. 2:22-cv-00540-JJT (D. Ariz. Nov 2, 2022, ECF 47).* Notably, as part of his certification order, Judge Tuchi entered such a stay in the *CSAA* matter. He also recently entered such a stay in two other substantively identical matters*: Doyle v. Pekin Ins. Co., No. 2:22-cv-00638-JJT (D. Ariz. Nov. 4, 2022, ECF 40),* and *Miller v. Trumbull Ins. Co., No. 2:22-cv-01545-JJT (D. Ariz. Nov. 4, 2022, ECF 17).* Plaintiff's counsel has agreed to the stay relief requested here. Defendant respectfully

1

submits this Court should stay this matter, including Defendant's responsive pleading obligations, pending the Arizona Supreme Court's disposition of the certified questions in the *CSAA* matter.

## BACKGROUND

Plaintiff Muehlhausen alleges that on January 28, 2021, he was injured in an accident with an underinsured motorist. Compl., ¶¶ 22-36. At the time of the accident, Plaintiff was allegedly insured under an Allstate Fire auto insurance policy (the "Muelhausen Policy") which covered four vehicles. *Id.,* ¶ 37. The Muehlhausen Policy had UIM coverage limits of $25,000 per person and $50,000 per accident. *Id.* Plaintiff Muehlhausen alleges that, on April 19, 2021, he submitted a claim for UIM benefits on all vehicles insured on the policy, and that, after corresponding with his counsel, on May 16, 2022 Defendant sent a letter notifying Plaintiff that pursuant to A.R.S. § 20-259.01(H), his policy had an anti-stacking provision providing that if multiple policies or coverages applied he had the right to select the policy or coverage he wanted to apply, only one of which would apply. *Id.,* ¶¶ 40-44. Plaintiff Muehlhausen alleges Defendant tendered $25,000 policy limits on only one of the vehicles. *Id.,* ¶¶ 45-48.

Plaintiff Gaytan alleges that, on January 28, 2020, she was injured in an accident with an underinsured motorist. Compl., ¶¶ 49-62. At the time of the accident, Plaintiff was allegedly insured under an Allstate Fire auto insurance policy (the "Gaytan Policy") which covered two vehicles. *Id.,* ¶ 63. The Gaytan Policy had UIM coverage limits of $15,000 per person and $30,000 per accident. *Id.* Plaintiff Gaytan alleges that Defendant did not notify her of the right to select one policy or coverage within 30 days after receiving notice of the accident, and ultimately sent her counsel payment of $15,000. *Id.,* ¶¶ 65-66.

Plaintiff Wood alleges that, on March 30, 2018, he was injured in an accident with an underinsured motorist. Compl., ¶¶ 68-79. At the time of the accident, Plaintiff was allegedly insured under an Allstate Fire auto insurance policy (the "Wood Parents' Policy") which covered two vehicles. *Id.,* ¶ 80. The Wood Parents' Policy had UIM

2

coverage limits of $100,000 per person and $300,000 per accident. *Id.* Plaintiff Wood alleges he was also insured under a UM/UIM policy of his own issued by a different entity, Allstate Property and Casualty Insurance Company, pursuant to which he received $15,000 in UM/UIM benefits for the accident. *Id.,* ¶ 81. In addition, Plaintiff Wood alleges he was insured under a separate Allstate Fire policy which covered a single vehicle, his Toyota RAV4 (the "Wood Individual Policy"). *Id.,* ¶ 83. Wood alleges Defendant failed to notify him of this coverage or tender any payment to him under this coverage. *Id.* According to Wood, Defendant did not notify him of the right to select one policy or coverage within 30 days after receiving notice of the accident, and that he should have received the entirety of the UIM benefits under his own and his parents' Allstate Fire policies. *Id.,* ¶¶ 85-87.

On November 2, 2022, in a case substantively identical to this one, the court in *Franklin v. CSAA* stated this "is the first-filed of eleven known, present actions—four in the District Court and seven in Maricopa County Superior Court—that turn on the resolution of the same question," and certified the following two questions to the Arizona Supreme Court:

> Does A.R.S. § 20-259.01 mandate that a single policy insuring multiple vehicles provides different underinsured motorist (UIM) coverages for each vehicle, or a single UIM coverage that applies to multiple vehicles?

> Does A.R.S. § 20-259.01(B) bar an insured from receiving UIM coverage from the policy in an amount greater than the bodily injury liability limits of the policy?

*CSAA* Certification Order, ECF 47, pp. 2-4.

Defendant intended to file a Motion to Dismiss in this case which turned, among other things, on these very issues. But now that the *CSAA* Court has certified these questions to the Arizona Supreme Court, Defendant respectfully submits that a stay of all proceedings in this matter, including Defendant's responsive pleading obligation, is warranted here and, as noted, Plaintiff's counsel agrees to this relief.

3

## MEMORANDUM OF POINTS AND AUTHORITIES

Courts have inherent discretion to stay proceedings before them.  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  *See also Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (same principle).  Courts considering a motion to stay weigh competing interests.  *Landis*, 299 U.S. at 254–55.  "Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."  *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254–55).  A court "may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case."  *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979).

Courts have often stayed proceedings pending a ruling on certified questions.  *See, e.g., Chaparro v. Ryan,* No. CV1900650PHXDWLMHB, 2019 WL 3290328, at *6 (D. Ariz. July 22, 2019) ("This action is stayed pending a response to the above certified question from the Arizona Supreme Court.").  *See also Howard v. Zimmer, Inc.*, 718 F.3d 1209, 1210 (10th Cir. 2013) ("we stayed the Howards' appeal pending resolution of a question of state law certified to the Oklahoma Supreme Court."); *Lobato v. State of New Mexico Env't Dep't*, No. 09-1203 BB/ACT, 2012 WL 12897384, at *2 (D. N.M. Feb. 15, 2012) ("The case was stayed pending the New Mexico Supreme Court's ruling on the two questions certified by this Court."); *Williams v. Metropcs, Wireless, Inc.*, No. 09-22890-CIV, 2010 WL 1645099, at *8 (S.D. Fla. Apr. 21, 2010) (staying case pending Florida Supreme Court's response to certified question from another case).

In fact, applying the above standards, Judge Tuchi entered a stay in the *CSA, Doyle* and *Trumbull* cases pending a decision by the Arizona Supreme Court in *Franklin v. CSAA* on the proposed certified questions. Applying the above standards leads to the conclusion that a stay of all proceedings is clearly warranted here.

## A. A Stay Would Conserve Resources and Promote Judicial Economy.

A stay would serve the orderly course of justice and prevent any hardship to the parties from proceeding with discovery without the benefit of any potential guidance from the Arizona Supreme Court.

Courts have found that a stay is appropriate pending an appellate decision when it will "conserve resources which could be unnecessarily expended." *In re Sprouts Farmers Mkt., Inc. Emp. Data Sec. Breach Litig.*, No. MDL 16-02731-PHX-DLR, 2017 WL 3051243, at *3 (D. Ariz. May 24, 2017). This is particularly true when, as is certainly the case here, the forthcoming decision "could materially alter the nature of at least some of Plaintiff's claims." *Head v. Citigroup Inc.*, No. CV-18-08189-PCT-DLR, 2020 WL 6198950, at *1 (D. Ariz. Sept. 22, 2020). *See also Flores-Angeles v. United States*, No. CR-10-00506-PHX-SRB, 2017 WL 562424, at *2 (D. Ariz. Jan. 19, 2017), *report and recommendation adopted*, No. CR-10-00506-PHX-SRB, 2017 WL 553117 (D. Ariz. Feb. 10, 2017) (granting stay pending U.S. Supreme Court and Ninth Circuit decisions that could significantly narrow the relevant issues).

The Arizona Supreme Court's decision on the certified questions in *CSAA* -- the very issues before this Court in the instant case -- plainly will materially impact this Court's assessment of Plaintiffs' claims. Plaintiffs' entire lawsuit is premised on the theory that Defendant failed to comply with A.R.S. § 20-259.01(H) because it did not notify them or putative class members in writing, either in the policy or within 30 days after notice of the collision, of the right to select one of supposedly multiple UM and UIM coverages available under their policies, and therefore that stacking of these coverages is required. According to Plaintiffs, Defendant breached the policy and violated Arizona

5

law when it failed to comply with Section H and refused to pay them stacked UIM coverage for each vehicle insured under their applicable Policies.

Plaintiffs' central liability theory therefore falls squarely within the certified questions presented in *CSAA*. A decision by the Arizona Supreme Court on the certified questions in that case could well dispose of Plaintiffs' entire liability theory, or at least narrow it. Judge Tuchi expressly recognized this in his certification order in *Franklin*: "the parties disagree entirely on the state law questions proposed for certification, *the resolution of which will be dispositive to the case, and the questions are of significant magnitude.*" *CSAA* Certification Order, p. 3 (emphasis added).

As one court explained in finding a stay warranted, it "makes little sense to move forward with dispositive motions . . . when the Supreme Court's . . . decision could materially alter the nature of at least some of Plaintiff's claims." *Head,* 2020 WL 6198950, at *1. Similarly, in *Berrow v. Navient Sols. LLC*, No. CV-20-01342-PHX-SMB, 2020 WL 8267706, at *3 (D. Ariz. Dec. 17, 2020), the court stated: "The Supreme Court decision . . . will clarify the law, and therefore, discovery in this case. Further, the decision will avoid exhausting judicial resources to decide things like discovery disputes and motions, which could later prove fruitless. . . . The Court finds that a stay would further judicial economy in this case." (Citations omitted.) *See also Canady v. Bridgecrest Acceptance Corp.*, No. CV-19-04738-PHX-DWL, 2020 WL 5249263, at *4 (D. Ariz. Sept. 3, 2020) ("Having weighed the competing interests, the Court concludes a stay is warranted. There is only a slight risk of harm to Canady, and that risk doesn't outweigh the interests of efficiency and judicial economy that will be served by delaying further litigation of this action."); *Flores-Angeles,* 2017 WL 562424, at *2 ("Because neither the Ninth Circuit nor the Supreme Court has decided the main issues that Defendant raises in his § 2255 motion, and both courts are expected to do so within the next few months, the Court agrees with the government that controlling decisions by the Supreme Court and the Ninth Circuit in *Dimaya* and *Begay*, respectively, will narrow the

issues and promote judicial economy."); *Miguel Zepeda v. USA*, No. CV1701229PHXROSJFM, 2019 WL 859706, at *1 (D. Ariz. Feb. 22, 2019) ("neither party will be prejudiced if the case is stayed.  Further, permitting a stay may simplify the issues in this case and promote judicial economy."); *Winters v. Loan Depot LLC*, No. CV-20-01290-PHX-SPL, 2020 WL 8254053, at *2 (D. Ariz. Oct. 29, 2020) ("the interests of judicial economy weigh in favor of granting the stay.  Discovery has not yet begun. Staying the matter pending the [Supreme Court] decision will potentially absolve the need for complex discovery[.]").

Applying the above principles here, it simply makes no sense for the parties and the Court to devote significant time and resources to litigation of this matter when a decision by the Arizona Supreme Court could well dispose of part, if not all, of this lawsuit, or at least provide much needed guidance regarding Plaintiffs' central liability theory.  Staying all proceedings here would serve the interest of judicial economy, would conserve the parties' and this Court's resources, and would allow this Court and the parties to benefit from any potential guidance from the Arizona Supreme Court.

**B.    Plaintiffs Will Not Be Prejudiced by A Stay.**

Plaintiffs, as their counsel has recognized in agreeing to a stay here, will suffer no injury if proceedings are stayed pending resolution of the certified questions.  In this regard, delay itself is not a sufficient harm to justify denial of a stay. *Bishop v. Schriro*, No. CV-08-964-PHX-SMM (JRI), 2009 WL 1749989, at *3 (D. Ariz. June 18, 2009) ("Defendants have not espoused any real damage from a stay, apart from the delay itself."); *Declements v. Americana Holdings LLC*, No. CV-20-00166-PHX-DLR, 2020 WL 8181702, at *1 (D. Ariz. Dec. 4, 2020) (granting stay that "will be relatively brief" pending Supreme Court decision in related case).

Indeed, as one court stated, this "Circuit has made clear that monetary recovery cannot serve as the foundation to deny a stay," and, while the plaintiffs in that case sought "more than just an award of damages and may suffer some continuing harm as a result of

7

a stay," the court explained "Plaintiffs have not made a sufficient showing that they will suffer irreparable damage and a miscarriage of justice if the case were to be stayed." *In re Sprouts* 2017 WL 3051243, at *2 (citation and internal quotations omitted). Similarly, the court in *Head* stated: "Although a stay might delay the receipt of monetary damage should Plaintiff ultimately succeed in this litigation, such a delay does not constitute an irreparable injury. Moreover, even in the absence of a stay, there is no guarantee that Plaintiff's claims would be resolved before the Supreme Court issues its decision." 2020 WL 6198950, at *1.

Here too, any delay in recovering monetary damage should Plaintiffs ultimately succeed in this litigation does not constitute sufficient harm to Plaintiffs that would weigh against staying this matter. Moreover, the instant case was recently filed, and a stay of proceedings will spare both parties the expense and burden of proceeding with motion practice on the Motion to Dismiss Defendant intends to file. That is particularly true where an answer by the Arizona Supreme Court may well obviate or at least dictate the course of any such Motion. And there is absolutely no reason to believe the Arizona Supreme Court will not promptly decide whether to accept the certified questions and, if so, promptly issue a ruling thereon.

## C.    Defendant Will Be Significantly Prejudiced without a Stay.

By contrast, absent a stay, Defendant faces substantial risk of costly and time-consuming motion practice and discovery, which could all be for naught. Courts have found such potentially unnecessary litigation expense sufficient to demonstrate prejudice justifying a stay. *See, e.g.*, *Chattanond v. Discover Fin. Servs., LLC*, No. CV-08549, 2016 WL 8202736, at *4 (C.D. Cal. Feb. 26, 2016) ("hardship to Defendant and considerations of judicial economy weigh in favor of a stay. If the case is not stayed, Defendant will suffer hardship in conducting discovery and trial preparation[.]"); *Mackiewicz v. Nationstar Mortg., LLC*, No. 615-CV465, 2015 WL 11983233, at *1 (M.D. Fla. Nov. 10, 2015) ("a stay would reduce the burden of litigation on the parties and the Court[.]").

8

For example, in *In re Sprouts,* the court stated:

> The Court next considers the hardship to Defendant absent a stay. As noted above, there is no dispute that the Supreme Court's decision in *Morris* is central to the arbitration issues present in this case. If the Supreme Court were to overturn this Circuit's decision in *Morris*, the arbitration agreements may be found enforceable and Plaintiffs would be precluded from moving forward with this class action litigation. Without a stay, however, Defendant would be required to defend a large class action that might be rendered moot and unnecessary by the *Morris* decision.

2017 WL 3051243, at *2. The *Berrow* court similarly held:

> Defendant argues that it will be a hardship for it to have to litigate its potential TCPA liability from an uncertain position. While uncertainty in the law alone does not merit a stay, the Court finds that the *Duguid* decision has the potential to narrow and clarify the issues in this case related to Defendant's TCPA liability. While Plaintiff argues that, no matter what the Supreme Court decides, Defendant will still have to undergo discovery to determine whether their system qualifies as an ATDS, the Court is not persuaded by this point. The Supreme Court's decision will potentially clarify and narrow discovery questions that need to be answered, likely saving both parties time and resources. Thus, this factor weighs, although minimally, in favor of granting the stay.

*Berrow*, 2020 WL 8267706, at *2.

In finding a stay warranted in *Head,* the court stated "absent a stay Defendant will incur costs related to class certification briefing, completing expert discovery, briefing dispositive motions, and potentially preparing for trial, all while the Supreme Court considers an issue that could significantly narrow this case." 2020 WL 6198950, at *1. *See also Winters* 2020 WL 8254053, at *1 ("Defendant would suffer harm if it were forced to proceed litigating this class action absent a stay. The issue of the definition of ATDS is central in the instant case, as the definition of an ATDS directly bears on Plaintiff's allegation that 'Defendant used an [ADTS]' in violation of the TCPA. (Doc. 16 at ¶ 10). Denying the stay would subject Defendant to costs related to class certification briefing, completing expert discovery, briefing dispositive motions, and potentially preparing for

9

trial, all while the Supreme Court considers an issue that could significantly narrow the case.").

The same is true here. Defendant should not be forced to undergo costly and potentially unnecessary motion practice and discovery pending resolution by the Arizona Supreme Court of issues relevant to the heart of this case. As in the substantively identical *CSAA*, *Trumbull,* and *Doyle* matters, a stay of the proceedings, including Defendant's responsive pleading obligations, is warranted here.

## CONCLUSION

For all the foregoing reasons, Defendant Allstate Fire and Casualty Insurance Company respectfully requests this Court to enter an Order staying this action, including Defendant's responsive pleading obligations, pending resolution by the Arizona Supreme Court of the questions certified in *Franklin v. CSAA*.

**DATED** this 14th day of November, 2022.

**DENTONS US LLP**

By: */s/ Monica R. Thompson*
    Monica Renee Thompson
    *Attorneys for Defendant*

10